2024 IL App (2d) 240183-U
No. 2-24-0183
Order filed May 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| and | ) ) | No. 24-DV-25 |
| ANTHONY BUTLER, | ) ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's findings that defendant committed a detainable offense, posed a risk to the safety of any person or the community, and that no condition or combination thereof could mitigate that risk were not erroneous. Affirmed.

¶ 2    Defendant, Anthony Butler, requests that we vacate the circuit court's order granting the State's petition to deny him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff.

_____

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code of

Jan. 1, 2023) (amending various provisions of the Act); *Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant contends that the State failed to meet its burden of proving that he committed a detainable offense, posed a risk to the safety of any person or the community, and no condition or combination thereof could mitigate his threat to any person or the community. For the following reasons, we affirm.

¶ 3                                    I.  BACKGROUND

¶ 4      Defendant was charged on March 4, 2024, with two counts of Class A domestic battery. 720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2022). The charges stem from a domestic dispute between defendant and his ex-girlfriend, Yasmin Hughes, in a Meijer parking lot.

¶ 5      That same day, the State filed a verified petition to detain defendant pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State alleged that defendant was charged with detainable offenses and that his pretrial release posed a real and present threat to the safety of any person or the community. *Id.* §§ 110-6.1(a)(4). It further asserted that defendant's criminal history included, *inter alia*, a pending case (No. 21-CF-54) in De Kalb County for aggravated domestic battery (720 ILCS 5/12.3.3(a-5) (2022)) and aggravated battery (*id.* § 12-3.05(d)(2)) relating to the purported strangulation of Hughes while she was pregnant, and a pending case (No. 22-CF-42) in Kane County for aggravated battery (great bodily harm) (*id.* § 12-3.05(a)(1)).

---

Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 6    On March 6, 2024, a hearing was held on the State's petition. The State argued, based on a police synopsis, the field case report, defendant's prior criminal history, and photographs of Hughes' injuries, that defendant committed detainable offenses (domestic battery) and that defendant was a danger to both Hughes and the community.

¶ 7    Specifically, the synopsis and case report related that, on March 3, 2024, police responded to 911 calls from multiple witnesses that reported that defendant was striking Hughes while in a car parked at Meijer. One of the calls came from Hughes' phone, and dispatch advised that it could hear fighting and the caller screaming on the line. When police arrived, defendant was found in the back seat of a vehicle and Hughes was in the driver's seat. Police noted that Hughes had visible "fresh" injuries to her neck and chest, which were tendered as Exhibit No. 3, while defendant had a cut on his right hand. Police indicated that Hughes was visibly upset but would not tell officers how she received her injuries. She also told officers that defendant did not strike her or cause her injuries, as her injuries were from a few days' prior. Police stated that defendant refused to speak about the incident and only reported that Hughes was upset about a recent death in the family. Thereafter, police conducted body-cam interviews with four witnesses who stated that they observed defendant "violently striking [Hughes] as [she] was screaming." Police also reported that one witness observed defendant choking Hughes, and he physically intervened and pulled defendant's hand from Hughes' neck and face.

¶ 8    Based on this proffer, the State argued that defendant committed detainable offenses and that he was a danger specifically to Hughes, because he was on bond at the time of this offense, and he was a danger to the community because he was on bond in two cases that included violent offenses and then "commit[ted] a third violent offense in the parking lot of the Meijer." Finally, the State asserted that no conditions of release would mitigate the real and present threat that

- 3 -

defendant posed because he had been placed on conditions by the court and showed that he cannot abide by those conditions.

¶ 9    Defense counsel argued that case No. 21-CF-54 was from "well over three years ago" and, as both of his pending matters were still pretrial, he maintained the presumption of innocence. Additionally, counsel noted that defendant had no other crimes of violence in his background, and he had successfully completed his conditions of mandatory supervised release after serving a sentence in the Department of Corrections in 2016. Defendant lived with family, supported five children financially and emotionally, and was employed full-time for the year and a half prior to his arrest. Regarding his health, counsel noted that defendant had a detached retina, for which he was prescribed medication and was scheduled for surgery.

¶ 10    Referencing the police synopsis and the case report, defense counsel argued that these documents were internally inconsistent because police officers stated that Hughes would not tell police how she received the injuries, however, the reports indicated that police were told that Hughes received her injuries prior to the dispute. Moreover, defense counsel asserted that the reports reflected that Hughes told officers that she did not call 911, she was not screaming for help, and that there was no physical contact between herself and defendant. Based on this information, counsel asked for the imposition of conditions less than detention, including: pretrial services check-ins, drug testing, alcohol testing, and e-notify sign-up (to receive text message alerts for future court dates).

¶ 11    Based on the proffered evidence, the circuit court ordered defendant's continued detention. The court noted that defendant was charged with two detainable offenses and that the State proved by clear and convincing evidence that the proof was evident and presumption great that defendant committed those offenses. Additionally, the court found that the State proved by clear and

convincing evidence that defendant posed a real and present threat to the safety of Hughes. The court considered the inconsistencies noted by defense counsel but found that other evidence showed Hughes was "clearly a victim in this matter." The court also considered the fact that Hughes was also the complaining witness in case No. 21-CF-54 and the presumption of his innocence in that case. Moreover, the court determined that no condition or combination of conditions would mitigate the real and present threat defendant posed because defendant's criminal history showed that he was either not willing or capable of complying with court orders.

¶ 12    Thereafter, defendant timely appealed, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On April 10, 2024, defendant filed a notice in lieu of Illinois Supreme Court Rule 604(h) (eff. April 15, 2024) memorandum, and, on April 25, 2024, the State responded.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, defendant argues that the State failed to meet its burden of proving that the proof was evident or presumption great he committed domestic battery, he posed a risk to the safety of Hughes or the community, and no condition or combination thereof could mitigate his threat to Hughes or the community. He requests that we reverse his detention order. We disagree.

¶ 15    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). Section 110-6.1(e) of the Code presumes that all persons charged with an offense are eligible for pretrial release. *Id.* § 110-6.1(e). However, a defendant's pretrial release may be denied in certain statutorily-limited situations (qualifying offenses). *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant

has committed a detainable offense (*id.* § 110-6.1(e)(1)), the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* §§ 110-6.1(a)(1)-(7), (e)(2)), and less restrictive conditions would not avoid the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

¶ 16    If the circuit court finds that the State proved a real and present threat to the safety of any person or the community, the circuit court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). However, if the court determines that the defendant should be detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community based on the specific articulable facts of the case. *Id.* § 110-6.1(h)(1).

¶ 17    Our standard of review is twofold. We review the circuit court's factual findings regarding the prerequisites to detention under the manifest-weight-of-the-evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence only where the finding is unreasonable. *Id.* We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Id*. An abuse of discretion occurs only when the circuit court's decision is unreasonable. *Id.*

¶ 18    In his notice of appeal, defendant asserts first that the State failed to meet its burden to establish by clear and convincing evidence that the proof was evident and presumption great that he committed the charged offenses. He elaborates that there was insufficient evidence because Hughes told officers that several 911 calls were received by dispatch because she believed defendant was yelling loud, she told officers that defendant did not strike her, and she told police that the injuries on her face and neck were from days before the alleged incident. We find the circuit court was not unreasonable in concluding that defendant committed detainable offenses.

¶ 19    Here, the circuit court noted that it relied on the police synopsis, a field case report, and the tendered photographs of Hughes' injuries. The evidence at the pretrial detention hearing showed that multiple third-party witnesses called 911 and reported that they observed defendant "violently striking [Hughes] as [she] was screaming." Moreover, one witness in particular stated that he watched defendant "choking [Hughes] with his left hand and place[] his right hand over her mouth." This witness approached defendant and removed his hand from Hughes' neck. The court also saw photographs of injuries on Hughes' neck that police noted appeared to be "fresh," which were consistent with the third-party witness accounts. It was not unreasonable for the court to find these uninterested witnesses' accounts more credible than Hughes. Accordingly, despite Hughes' statements to police that defendant did not strike her or cause her injuries it was not unreasonable, based on the third-party witnesses' accounts, for the court to find the proof evident and presumption great that defendant committed domestic battery.

¶ 20    Next, defendant asserts that the State failed to prove by clear and convincing evidence that defendant posed a real and present threat to Hughes or the community because defendant did not physically contact Hughes in the Meijer parking lot and he is presumed innocent in case No. 21-CF-54 (where Hughes is also listed as the complaining witness). Here, the court considered the

police synopsis, the case field report, the photographs of Hughes' injuries, and the charges filed in case No. 21-CF-54. The court specifically considered defendant's presumption of innocence in the pending De Kalb County case and Hughes' statements contradicting the third-party witnesses' accounts. Nonetheless, the court found that sufficient evidence existed that Hughes was "clearly a victim in this matter" and that an alleged second matter existed wherein Hughes was also the complaining witness. Similarly, based on the evidence, it was not against the manifest weight of the evidence for the circuit court to find that Hughes was in danger in this case.

¶ 21    Finally, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that no conditions or combination of conditions could mitigate defendant's threat to Hughes' safety because defendant could have been placed on pretrial services or electronic home, "Bischof," or GPS monitoring; ordered to have no contact or stay away from Hughes; required to provide random drug and alcohol screenings; and/or ordered to sign up for e-notify reminders regarding his court dates.

¶ 22    Defendant's argument here is unavailing. First, defendant fails to provide any evidence or argument that shows the court's finding was against the manifest weight of the evidence. Instead, defendant merely cites potential conditions, which may be imposed but were originally discussed and rejected at the detention hearing. Second, the circuit court's findings were not against the manifest weight of the evidence. In addition to the aforementioned evidence, the circuit court found that, based on defendant's pending cases, specifically, that he had been on "warrant status" in his cases for a substantial period, defendant "cannot comply with court orders with respect to appearing in court when required." Based on this, the court concluded that defendant would not be willing or capable of complying with less restrictive conditions. This finding was reasonable. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33 (where the defendant was on parole and failed

to comply with the conditions placed upon him, this "demonstrated history of refusing to abide by conditions of release" satisfied the State's burden of showing no less restrictive conditions were appropriate and the circuit court did not err in so finding).

¶ 23 Additionally, defendant asserts that the circuit court erred in determining that no conditions could reasonably ensure his appearance at later hearings or prevent him from being charged with a subsequent offense. We find defendant's argument here is misplaced because the language he relies on implicates section 110-6, which applies to defendants who are released prior to conviction and a hearing is held to either revoke pretrial release, modify the conditions of release, or sanction a defendant for violation of conditions of release. 725 ILCS 5/110-6 (West 2022). Defendant has not, in *this* case, been placed on pretrial release and subsequently argued against the modification or revocation of his release. As such, this issue is unavailing.

¶ 24 Overall, the circuit court's determination was not unreasonable as it was supported by the police synopsis; the field case report; the photographs of Hughes; and defendant's criminal history, specifically his two pending cases. Moreover, it was not an abuse of discretion for the court to find that defendant committed detainable offenses, his pretrial release posed a real and present threat to the safety of Hughes, and that no condition or combination of conditions would mitigate defendant's safety threat to Hughes.

¶ 25                          III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 27 Affirmed.